# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JAMES MOORE

VERSUS

UNITED PARCEL SERVICE
COMPANY OF DELAWARE AND/OR
UNITED PARCEL SERVICE INC.

CIVIL ACTION

NO. 11-CV-00619-SDD-RLB

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This employment dispute is before the Court on Defendant, United Parcel Service Company of Delaware and/or United Parcel Service Inc.'s ("UPS"), *Motion for Summary Judgment*.[1]  Plaintiff has filed an opposition, to which UPS filed a reply.[2]   Having considered the parties' submissions and applicable authority, the Court finds that the Motion for Summary Judgment should be granted.

## I.       Plaintiff's Statement of Controverting Facts and Declaration

In order to properly analyze the pending motion, the Court finds it necessary to address some concerns with *Plaintiff's Statement of Facts and Declaration*.   On June 20, 2013, the Court signed an *Order* granting UPS' *Motion to Strike Statements Contained in Plaintiff's Statement of Controverting Facts and Incorporated Declaration Under Penalty of Perjury*; however, Plaintiff was

---

[1] Rec. Doc. 32.
[2] Rec. Doc. 44; Rec. Doc. 51.

given fifteen days from the date of the *Order* to file a corrected statement and separate declaration.[3] Although Plaintiff took advantage of the opportunity to re-file an untimely *Statement of Controverting Facts*, which the Court will consider in spite of its tardiness, and *Plaintiff's Declaration Under Penalty of Perjury* ("*Declaration*"), he failed to correct these deficiencies.[4]  Plaintiff's *Statement of Controverting Facts* and *Declaration* are rife with evidentiary problems.

The majority of Plaintiff's *Statement of Controverting Facts* relies on his *Declaration* to create issues of fact by offering explanations that either contradict his prior sworn deposition testimony or provide new responses to questions for which he could provide no explanation during his deposition.   In particular, Plaintiff was specifically questioned about his activities on certain days, including those dates, July 13 through 15 of 2010, which led to his ultimate termination from UPS.[5]  During his deposition, Plaintiff could not offer any explanations for the large gaps in time between deliveries or his daily work-related activities.[6] And yet, now, Plaintiff's *Declaration* sets forth and offers detailed explanations that he either could not provide at his deposition, or that directly contradict his prior testimony.

The situation before the Court today is strikingly similar to the situation in *McCulley v. JTM Industries, Inc.*, where the plaintiff's affidavit was struck from the

---

[3] Rec. Doc. 55.  Although the Court signed the *Order* on June 20, 2013, because it was not entered and distributed to the parties until the following business day, the fifteen days must be calculated from June 21, 2013.
[4] Rec. Doc. 58; Rec. Docs. 56 and 57.
[5] Rec. Doc. 32, Exhibit A, pp. 120-21; 126-27; 129; 131; 133; 173-75; 178-79; 181-83; 192-194; and 200.
[6] Rec. Doc. 32, Exhibit A, pp. 173-75; 178-79; 181-183; 192-194; and 200.

record because it "directly contradict[ed] his deposition in that he had a remarkable recall of past events that he did not possess during the taking of his deposition."[7]   The Fifth Circuit upheld the district court's decision to strike the affidavit dismissing the plaintiff's argument that the affidavit supplemented his deposition testimony.   Nor did plaintiff offer any evidentiary support that his purported diminished capacity hindered his ability to testify at his deposition. Unlike the plaintiff in *McCulley*, here the Plaintiff has offered no explanation for his newly found ability to recall events within his *Declaration* for which he could offer no explanation at the time of his deposition.   Within the Fifth Circuit, the rule is clear that a "nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony."[8]

Due to the prevalent conflicts between Plaintiff's statements and his prior sworn deposition testimony, and the lack of explanation for the discrepancies, the Court strikes Plaintiff Moore's *Declaration*.[9]   Therefore, to the extent Plaintiff's *Statement of Controverting Facts* solely relies upon his *Declaration*, those statements shall also be stricken.   To the extent that Plaintiff's *Statement of*

---

[7] *McCulley v. JTM Industries, Inc.*, 116 F.3d 1477, at *2 (5th Cir. 1997).
[8] *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, at 228 (5th Cir. 1984)(quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980)).
[9] Specifically, the following shall be struck from Plaintiff's Statement of Controverting Facts: 4 (b-e); 6 (a-c; e); 13 (b(i-iii)); 14(a-c); 15(b(1-4; 5 to the extent it relies on 1-4)); 24(a(1-3; and 4 as it relies on the prior statements); 24 (b)(1-2)); 25 (b(1-4; and 5 as it relies on the prior statements); and 26(1-3, and 4 as it relies on the prior statements).

*Controverting Facts* includes any declarations and legal arguments or conclusions, those statements are stricken from the record.[10]

## II.     Facts and Procedural History

Plaintiff, an African American man, began his career at UPS as a peak season employee in 1990, eventually becoming a regular employee and earning a promotion to package car driver.[11] During his tenure at UPS, Plaintiff remained a member of the local union, the International Brotherhood of Teamsters.[12] In 2000, Plaintiff sustained injuries in a work related accident and took a nine year leave of absence.[13] However, in July of 2009, Plaintiff returned to UPS, under the supervision of Adam Greenbaum ("Greenbaum"), the UPS Business Center Manager in Gonazales, and Charlotte Browne ("Browne"), the on-road supervisor.[14]

Drivers for UPS are required to use a hand-held device known as a Delivery Information Acquisition Device ("DIAD").[15] The DIAD records the time of all pickups, deliveries, and messages.[16] UPS expects drivers to record the times when they drop off and pick up their packages in the DIAD.[17] The DIAD serves as the UPS driver's timesheet; it records the time of all scanned entries, and

---

[10] The following shall be struck from Plaintiff's Statement of Controverting Facts: 15(b)(4); 17; 24(a)(2); 26(2); 42; 43; 48; 49; 52; and 53.
[11] Rec. Doc. 32, Statement of Material Facts, No. 1; Rec. Doc. 32, Exhibit A, pp. 40-41.
[12] Rec. Doc. 32, Statement of Material Facts, No. 2; Rec. Doc. 58, Statement of Controverting Facts, No. 2.
[13] Rec. Doc. 32, Statement of Material Facts, No. 3.
[14] Rec. Doc. 32, Statement of Material Facts, No. 3; Rec. Doc. 32, Exhibit A, p. 56.
[15] Rec. Doc. 32, Statement of Material Facts, No. 4; Rec. Doc. 32, Exhibit A, p. 57.
[16] Rec. Doc. 32, Statement of Material Facts, No. 4; Rec. Doc. 32, Exhibit A, p. 57.
[17] Rec. Doc. 32, Statement of Material Facts, No. 4; Rec. Doc. 32, Exhibit A, p. 58.

management relies on these records to evaluate the time drivers spend at each stop.[18]   Drivers for UPS are expected to work efficiently to meet tight delivery schedules.[19]   Pursuant to the union contract UPS drivers receive payment for eight (8) hour days with a maximum one (1) hour lunch break.[20]   If drivers work in excess of eight hours, they are to receive pay at a rate of time-and-a-half.[21]   In addition, UPS has a company policy of honesty which is set forth in its UPS Code of Conduct and UPS Policy Book.[22]

From July 2009 through July 2010, Plaintiff's work came under scrutiny for allegedly dishonest conduct. In November of 2009, Plaintiff submitted inaccurate records containing unaccounted gaps in time.[23]   On November 20, 2009, Greenbaum terminated Plaintiff for his dishonest conduct.[24]   However, upon reconsideration and at the request of the Union, Plaintiff's termination was

---

[18] Rec. Doc. 32, Statement of Material Facts, No. 4; Rec. Doc. 32, Exhibit A, p. 58.
[19] Rec. Doc. 32, Statement of Material Facts, No. 4; Rec. Doc. 58, Statement of Controverting Facts, No. 4.
[20] Rec. Doc. 32 Statement of Material Facts, No. 5; Rec. Doc. 58, Statement of Controverting Facts, No. 5.
[21] Rec. Doc. 32 Statement of Material Facts, No. 5; Rec. Doc. 58, Statement of Controverting Facts, No. 5.
[22] Rec. Doc. 32, Exhibit L, Browne Exhibit 5, pp. 1, 3 ("UPS is a company of honesty, quality, and integrity … We expect – as we always have – that UPS employees, and the people acting on our behalf, will adhere to these principles."); Browne Exhibit 6, p. 16. ("We present our company honestly to employees and, in turn, expect them to be honest with us…The great majority of our people are of high moral character.  However, when we do discover a dishonest person in our organization, we deal with that individual quickly and firmly.")
[23] Rec. Doc. 32, Statement of Material Facts, Nos. 12-15. The specific dates of dishonest conduct were November 10, 11, and 12 of 2009.
[24] Rec. Doc. 32, Statement of Material Facts, No. 16.

reduced to a time-lost suspension of ten days.[25]   Greenbaum warned Plaintiff that future occurrences would result in discharge.[26]

Approximately seven months later, it came to Greenbaum's attention that Plaintiff's pattern of dishonesty pertaining to time management had become an issue again.[27]   Adhering to UPS policy, Greenbaum directed Browne and Rebecca Doughty ("Doughty"), a part-time supervisor, to conduct a three-day observation of Plaintiff's activities.[28]   Based on their observations of Plaintiff's behavior on July 13, 14, and 15, 2010, Browne and Doughty determined that Plaintiff had engaged in dishonest acts.[29]   Within their report they noted that Plaintiff not only engaged in unsafe practices, but that he took excessive breaks, falsely recorded or failed to record personal time, and that he falsely reported deliveries.[30]   Greenbaum reviewed the information that Browne and Doughty collected and agreed with their findings.[31]   Before terminating Plaintiff, Greenbaum consulted with his supervisor and other members of labor management.[32]   They all agreed that termination was appropriate.[33]   Therefore,

---

[25] Rec. Doc. 32, Statement of Material Facts, No. 17; Rec. Doc. 58, Statement of Controverting Facts, No. 17.
[26] Rec. Doc. 32, Statement of Material Facts, No. 18; Rec. Doc. 58, Statement of Controverting Facts, No 18.
[27] Rec. Doc. 32, Statement of Material Facts, No. 19; Rec. Doc. 58, Statement of Controverting Facts, No. 19.
[28] Rec. Doc. 32, Statement of Material Facts, No. 22; Rec. Doc. 58, Statement of Controverting Facts, No. 22.
[29] Rec. Doc. 32, Statement of Material Facts, No. 22; Rec. Doc. 58, Statement of Controverting Facts, No 22.
[30] Rec. Doc. 32, Statement of Material Facts, Nos. 23- 24.
[31] Rec. Doc. 32, Statement of Material Facts, No. 28.
[32] Rec. Doc. 32, Statement of Material Facts, No. 29.
[33] Rec. Doc. 32, Statement of Material Facts, No. 29.

on July 29, 2010, Greenbaum terminated Plaintiff under the labor agreement for just cause due to his "acts of dishonesty."[34]

Following his discharge, Plaintiff filed a grievance with the union and a charge of disability and race discrimination with the Equal Employment Opportunity Commission (EEOC).[35]   Neither entity ruled in the Plaintiff's favor.[36] Subsequently, on September 9, 2011, Plaintiff filed the current action against UPS alleging that his former employer terminated him on July 29, 2010, because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e).  Plaintiff alleges that UPS' reasons for his termination are pretextual.[37] He contends that UPS has knowledge of other Caucasian UPS employees who have engaged in similar activity as Plaintiff, but who have not been terminated because of their race.[38]  Plaintiff maintains that UPS terminated him because of his race or, in the alternative, Plaintiff's race served as a motivating factor in UPS' decision.[39]  UPS has now moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure contending that there are no genuine material facts at issue.

---

[34] Rec. Doc. 32, Statement of Material Facts, No. 29.
[35] Rec. Doc. 32, Statement of Material Facts, Nos. 30 and 35.
[36] Rec. Doc. 32, Statement of Facts, Nos. 34 and 35.
[37] Rec. Doc. 1, ¶3.
[38] Rec. Doc. 1, ¶4.
[39] Rec. Doc. 1, ¶5.

## III.    Applicable Law

### A.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[41]   A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[42]   If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[43]   However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[44]

---

[40] Fed.R.Civ.P. 56(a)(West 2013).
[41] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, at 398-99 (5th Cir. 2008).
[42] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, at 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, at 323-25, 106 S.Ct. at 2552).
[43] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, at 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[44] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, at 315 (5th Cir. 1995) )(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[45] All reasonable factual inferences are drawn in favor of the nonmoving party.[46] Nevertheless, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[47]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[48]

## B.    Standard for Race Discrimination Claims

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating based on sex, race, color, religion, and national origin.  In such cases, the plaintiff may rely on either direct or circumstantial evidence to prove her employer's actions were motivated by intentional discrimination.

"Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption."[49]  This would "include any statement or written document showing a discriminatory motive on

[45] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[46] *Galindo v. Precision American Corp.*, 754 F.2d 1212, at 1216 (5th Cir. 1985).
[47] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, at 857 (5th Cir. 2010).
[48] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, at 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[49] *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, at 328-29 (5th Cir. 1994)(quoting *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).

its face."[50]   When a plaintiff offers direct evidence of discrimination, "then the burden shifts to the employer to prove that the same adverse action would have occurred regardless of discriminatory animus."[51]

In most cases, plaintiffs are unable to provide direct evidence of discrimination.   In those instances, the plaintiff may rely on circumstantial evidence to meet the seminal test set out in *McDonnell Douglas Corp. v Green* framework.[52]   "First, the plaintiff must establish a prima facie case of discrimination."[53]   Once a prima facie case is established by the plaintiff, the burden then shifts back to the employer to articulate a legitimate, nondiscriminatory reason for its conduct.[54]   If the employer satisfies its burden of production, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose."[55]   In order to satisfy this burden, "the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer."[56]

---

[50] *Jones v. Overnite Transp. Co.*, 212 Fed.Appx. 268, at 273 (5th Cir. 2006)(quoting *Fierros v. Tex. Dep't. of Health*, 274 F.3d 187, 195 (5th Cir. 2001)).
[51] *Id.*
[52] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
[53] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, at 142, 120 S.Ct. 2097, 147 L.Ed. 2d 105 (2000).
[54] *McDonnell Douglas Corp,* 411 U.S. at 802-03.
[55] *McCoy v. City of Shreveport*, 492 F.3d 551, at 557 (5th Cir. 2007).
[56] *Id.*

## IV.   Analysis

Plaintiff alleges that, at some point before his second termination, a fellow UPS co-worker, Guy Lowery, overheard Greenbaum state that he "was going to get that n... back!"[57] However, Lowery testified that Greenbaum did not give him any indication that he was referring to Plaintiff when he made this statement.[58]   More problematic is the proximity between the alleged discriminatory act and the Plaintiff's termination.  Assuming the statement to be true, Lowery testified that he could not be certain as to when he overheard the comment.[59]  When asked to provide his "best estimate" as to the timing of the statement, Lowery could not be certain if it was made in 2010 or 2011.[60]  Outside of this one isolated comment, Plaintiff has not offered any other evidence of racial epithets directed toward him or any other UPS employee. The Fifth Circuit has explained that when "comments are vague and remote in time they are insufficient to establish discrimination.  In contrast, specific comments made over a lengthy period of time are sufficient."[61]

Because Plaintiff has failed to establish that the alleged epithet was directed toward him and that it was proximate in time to his termination in July, 2011, the burden falls upon the Court to infer or presume how this statement related to his termination.   Direct evidence should not require inferences and

---

[57] Rec. Doc. 32, Exhibit E, at p.80.
[58] Rec. Doc. 32, Exhibit E, p. 81.
[59] Rec. Doc. 32, Exhibit E, p. 80.
[60] Rec. Doc. 32, Exhibit E, p. 80.
[61] *Jones*, 212 Fed.Appx. at 273-74 (quoting *Wallace v. Methodist Hos. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)(quoting *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655-56 (5th Cir. 1996)).

presumptions.  Accordingly, this one statement cannot and will not be considered direct evidence of intentional race discrimination.

Without direct evidence, Plaintiff must prove his claim under the *McDonnell Douglas* paradigm previously discussed.   Plaintiff's first hurdle is to establish a prima facie case of race discrimination under Title VII by satisfying the following elements:

> [The plaintiff] (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably.[62]

The first three factors do not appear to be in dispute.  Plaintiff is an African-American and therefore a member of a protected class.  He was qualified for his position as a package car driver and suffered an adverse employment action when he was terminated.  UPS contends, however, that Plaintiff has not come forward with evidence to establish the fourth element of a prima facie case of race discrimination.[63]

And yet, assuming that Plaintiff has established a prima facie case, it is his position that UPS's reason for terminating him was pretext for race discrimination.

## A.    Disparate Treatment

---

[62] *Bryan v. McKinsey & Co., Inc.,* 375 F.3d 358, at 360 (5th Cir. 2004).
[63] Plaintiff has not offered any evidentiary support to show that he was replaced by someone outside of the protected class.  Therefore, the Court limits its analysis to determine whether Plaintiff has established a claim of disparate treatment.

To establish a claim of disparate treatment, Plaintiff must show that UPS gave preferential treatment to another employee outside of his protected class under "nearly identical" circumstances.[64]   Notably, "[t]he employment actions being compared  will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[65]

Plaintiff attempts to make a disparate treatment argument by comparing himself to a white, female co-worker, Sadie Mann ("Mann") who was also supervised by Greenbaum.   However, Plaintiff and Mann held different job positions with distinctive responsibilities.  Plaintiff worked as a package car driver for UPS who utilized a DIAD to record his daily package pick-ups and drop-offs. In contrast, Mann worked as a clerk assisting customers inside of the UPS building.[66]  In fact, Mann was the only full-time employee who worked inside the UPS building.[67] Unlike Plaintiff, Mann's supervisors manually entered her time into the time code system.[68]   Even more significantly, Plaintiff has failed to demonstrate how he and Mann had comparable violation histories.   Although

---

[64] *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296 (5th Cir. 2000).
[65] *Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, at 893 (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).
[66] Rec. Doc. 32, Exhibit C, p. 11.
[67] Rec. Doc. 32, Exhibit C, p. 20.
[68] Rec. Doc. 32, Exhibit C, pp. 17-18.

Plaintiff makes the assertion that Mann was allowed to engage in acts of dishonesty, the record is devoid of any evidence of such behavior.

Plaintiff has not presented any evidence that Mann was stealing time and, based on his own deposition testimony, he did not think that she had done anything dishonest.[69]   Plaintiff has simply offered speculative statements about Mann's time sheets being inaccurate or her ability to leave early while continuing to receive pay.[70]   Notably, none of this speculative dishonest conduct was ever brought to Greenbaum's attention.[71]   The undisputed evidence shows that Greenbaum did not know of any dishonest conduct by Mann.[72]   These differences preclude Plaintiff from satisfying the "nearly identical" circumstances test set forth by the Fifth Circuit necessary to show disparate treatment.   Hence, the Court finds that Plaintiff has not come forward with evidence to establish the fourth element of a prima facie case of race discrimination necessary to survive summary judgment.

## B.   Plaintiff Has Failed to Show that UPS' Reason was Pretext

And yet, assuming that Plaintiff was able to clear his first hurdle and make out a prima facie case, UPS insists that there was no racial motivation in its decision to terminate Plaintiff; UPS' contends that its decision was based solely on its conclusion, following a three-day observation, that Plaintiff had engaged in acts of dishonesty in violation of company policy.   With this, UPS has discharged

---

[69] Rec. Doc. 32, Exhibit A, p. 236; Rec. Doc. 32, Exhibit C, pp. 15-16; 20-21.
[70] Rec. Doc. 32, Exhibit A, pp. 236-37.
[71] Rec. Doc. 32, Exhibit B, p. 49.
[72] Rec. Doc. 32, Exhibit B, pp. 44; 49; Rec. Doc. 32, Exhibit K, at ¶ 48.

its burden of production, and the burden shifts back to Plaintiff to prove that UPS' proffered reason is merely a pretext for discrimination.

Plaintiff attempts to overcome UPS's nondiscriminatory reason by arguing that the observations made by Browne and Doughty were inaccurate and contained false entries that could not have been made on personal observations. Putting aside the fact that the vast majority of Plaintiff's argument is based on his Declaration that contradicts his prior sworn deposition testimony, any inaccuracies contained in Brown and Doughty's report would be insufficient to establish pretext. Significantly, Plaintiff does not contend that Brown or Doughty harbor animosity toward him based upon his race or were motivated by racial animus. As such, it appears that Plaintiff has "miss[ed] the mark" by equating an erroneous decision to discriminatory motive.[73] As the Fifth Circuit has explained, these are not one in the same: "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue."[74] Because Browne and Doughty acted without animus, any errors within the report would not negate UPS' legitimate reason for terminating Plaintiff. The Court further notes that "Title VII does not protect an employee against unfair employment decisions; instead, it protects

---

[73] *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, at 1091 (5ᵗʰ Cir. 1995).
[74] *Id.* at 1091 (quoting *Little v. Republic Ref. Co.,* 924 F.2d 93, at 97 (5th Cir. 1991); *Smith v. Wal-Mart Stores,* 891 F.2d 117, 1180 (5ᵗʰ Cir. 1990); *Davin v. Delta Air Lines, Inc.,* 678 F.2d 567, 570-71 (5ᵗʰ Cir. Unit B 1982)).

against employment decisions based on discriminatory animus."[75]   Therefore, even if the report contained flaws, without motive, this would not defeat UPS' legitimate, non-discriminatory reason for terminating Plaintiff.

For similar reasons, Plaintiff's contention that Greenbaum should not have relied on Browne and Doughty's report must fail.   "An employer can make an incorrect employment decision; if based on a good faith belief with no discriminatory influences, then the court will not try the validity of the reason."[76] At the outset, UPS provided uncontested evidence about Greenbaum's similar treatment of Caucasian employees who he suspected of and then terminated for acts of dishonesty.[77]   UPS has also presented evidence—including Plaintiff's inability to offer any explanations for the inconsistencies in his DIAD records during his deposition[78] and the independent finding of the labor panel that concluded Plaintiff's termination was appropriate[79]—that shows that Greenbaum's decision to rely on the report was, in fact, reasonable, as well as his belief that Plaintiff had committed dishonest acts.[80]   Accordingly, the Court finds that Greenbaum's reliance on the report was reasonable.  The Court also finds that Plaintiff has failed to present summary judgment evidence that UPS' employment action taken against him was merely pretext for discrimination.

---

[75] *Jones*, 212 Fed. Appx. 268, at 275 (quoting *Neito v. L & H Packing Co.,* 108 F.3d 621, at 624 (5th Cir. 1997)).
[76] *Id.* (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)).
[77] Rec. Doc. 32, Statement of Material Facts, Nos. 48-49; Exhibit K, at ¶¶ 46-47.
[78] Rec. Doc. 32, Exhibit A, pp, 173-75; 178-79; 181-83; and 193-94.
[79] Rec. Doc. 32, Statement of Material Facts, No. 28.
[80] UPS also referred to evidence within the record that showed the consistency of Greenbaum's conclusions about Plaintiff's acts of dishonesty with the independent conclusions of Browne and Doughty—neither of whom had discriminatory motive. Rec. Doc. 32, Statement of Material Facts, No. 34.

## V.    Conclusion

Based on the foregoing, the Court hereby **GRANTS** United Parcel Service Company of Delaware and/or United Parcel Service Inc.'s *Motion for Summary Judgment*[81] and this action is dismissed with prejudice.   Plaintiff's *Motion for Leave to File One of Two Documents Out of Time*[82] is **DISMISSED AS MOOT**.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, this _____23_____th day of July 2013.


**SHELLY D. DICK, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[81] Rec. Doc. 32.
[82] Rec. Doc. 59.